1

2

3

4

5

6            UNITED STATES BANKRUPTCY COURT
            WESTERN DISTRICT OF WASHINGTON
7                     AT SEATTLE

In re                          )
8                              )    Chapter 11
KARL JOHN REINKE,              )
9                              )
            Debtor.            )    Bankruptcy No. 09-19609
10  _____)
                               )
11  KARL JOHN REINKE,          )    Adversary No. 09-01541
                               )
12            Plaintiff.       )
v.                             )    **MEMORANDUM DECISION**
13                             )
NORTHWEST TRUSTEE SERVICES,    )
14  INC., a Washington Corp.;  )
AURORA LOAN SERVICES LLC, a    )
15  Delaware Corp.; BAC HOME LOANS)
SERVICING INC., fka COUNTRY-   )
16  WIDE HOME LOANS SERVICING LP, )
a Texas Corp.; HOME CAPITAL    )
17  FUNDING, a California Corp.;   )
FIRST AMERICAN TITLE INSURANCE)
18  CO., a Washington Corp.;   )
LAWYERS TITLE INSURANCE CO.,   )
19  a Nebraska Corp.; WINSTAR  )
MORTGAGE PARTNERS, INC., a     )
20  Minnesota Corp.; MORTGAGE  )
ELECTRONIC REGISTRATION        )
21  SYSTEMS, INC., a Delaware  )
Corp.,                         )
22            Defendants.      )
    _____)
23
        The trial of this matter commenced on May 19, 2011, and
24
concluded on August 9, 2011.  The Court has considered the parties'
25
post trial submissions.  This Memorandum Decision contains the
26

27

28

MEMORANDUM DECISION - 1

1  Court's findings of fact and conclusions of law for purposes of
2  Bankruptcy Rule 7052.[1]

3      For the following reasons, the Court finds that defendants
4  Aurora Loans Services LLC ("Aurora") and Northwest Trustee
5  Services, Inc. ("NWTS") violated Washington's Deed of Trust Act,
6  but that plaintiff, Karl Reinke ("Plaintiff"), failed to prove that
7  he was injured by that violation.

8                          **I.   BACKGROUND[2]**

9      In this action, Plaintiff asserts various state and federal
10 causes of action against defendants related to the initiation and
11 pursuit of foreclosure proceedings against two parcels of real
12 property owned by him.  Plaintiff filed a proceeding under chapter
13 11 of the Bankruptcy Code on September 17, 2009, and a resolution
14 of these causes of action is critical to confirmation of a chapter
15 11 plan in that proceeding.

16     Plaintiff has been employed with various companies in the
17 mortgage loan business for 16 years, including as an originator of
18 mortgage loans and as a wholesale representative calling on
19 mortgage brokers.  In his bankruptcy petition, Plaintiff lists his
20 occupation as a mortgage broker.  Plaintiff's bankruptcy schedules
21 list four pieces of real property, two of which are at issue here.

22
23
24  ───────────────

25     [1]  Unless otherwise indicated, all Code, Chapter, Section and
    Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.*
26  and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et
    seq.*
27
28     [2]  The admitted facts in the parties' Joint Pre-trial Order
    (Dkt. 168) are incorporated herein by this reference.

MEMORANDUM DECISION - 2

**A.    The Shoreline Property.**

On April 11, 2007, Plaintiff executed a promissory note in favor of Winstar Mortgage Partners, Inc. ("Winstar") in the amount of $399,700 (the "Shoreline Note"), and a deed of trust (the "Shoreline Deed of Trust") to secure the note against Plaintiff's property commonly known as 16420 4th Avenue N.E., Shoreline, Washington (the "Shoreline Property").  Exs. P-2, P-1.  The Shoreline Deed of Trust named First American Title Insurance Company ("First American") as trustee, Winstar as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary "solely as nominee for Lender and Lender's successors and assigns."  Ex. P-1. Section 20 of the deed of trust permits a sale of the Shoreline Note and Deed of Trust without prior notice to Plaintiff and permits a change in the loan servicer with notice to Plaintiff.  The Shoreline Deed of Trust was recorded on April 17, 2007.  On May 18, 2007, Plaintiff received a letter from Aurora informing him that the servicing of his loan, including the right to collect payments, was being transferred to Aurora.  Ex. A-3.  The letter instructed Plaintiff to begin making payment to Aurora on June 1, 2007.  Plaintiff made the payments due under the Shoreline Note to Aurora until January of 2009.  Plaintiff testified that he stopped making payments because his income was reduced and he needed money for living expenses.

Defendant NWTS is a company which conducts foreclosures for lenders in the State of Washington, including for defendant Aurora. NWTS received a referral from Aurora on April 22, 2009, to commence a foreclosure proceeding against the Shoreline Property.  The referral was made through a website system called Lenstar Imaging,

MEMORANDUM DECISION - 3

which NWTS employees accessed by using a private user name and password to pick up foreclosure referrals. Screen shots from this system showing the instructions for foreclosure of the Shoreline Property indicate that Aurora was the beneficiary under the deed of trust "at the time of foreclosure sale," that foreclosure was to be filed in the name of MERS, that the loan was a "Freddie Mac Loan," and that the amount of the loan default was $12,075.30. Exs. P-3, P-4. The screen shots instruct NWTS to remit any funds to Aurora. Ex. P-3. The screen shots also contain Plaintiff's name, Plaintiff's address, a description of the Shoreline Property, and specific information about the Shoreline Note, but there is no specific reference to the holder of the note. Ex. P-4. There were no other agreements between Aurora and NWTS.

Two notices regarding the Shoreline Note and Property were sent to Plaintiff on April 22, 2009: a letter from Routh Crabtree Olsen, P.S. ("Routh Crabtree"), a law firm affiliated with NWTS, and a Notice of Default signed by "Aurora Loan Services LLC By Northwest Trustee Services, Inc., its duly authorized agent." Ex. P-7. The letter from Routh Crabtree advised Plaintiff that the firm was working with Aurora to help Plaintiff keep his home and further advised Plaintiff to contact the firm about alternatives such as loan forbearance, reinstatement, and modification. Ex. P-6. The notice of default advised Plaintiff that in order to reinstate the Shoreline Note he would be required to pay $16,356.26. Ex. P-7. Plaintiff does not dispute that he timely received the letter from Routh Crabtree and the notice of default.

On April 30, 2009, a representative of Aurora executed an Appointment of Successor Trustee, pursuant to which Aurora

MEMORANDUM DECISION - 4

appointed NWTS as the successor trustee under the Shoreline Deed of Trust.  In the Appointment of Successor Trustee Aurora warranted that it was the current beneficiary under the Shoreline Deed of Trust and the holder of the obligation secured by that deed of trust.  Ex. P-8.  A month later, on May 26, 2009, a representative of MERS executed a Corporate Assignment of Deed of Trust, assigning the interest of MERS under the Shoreline Deed of Trust "together with the Note or other evidence of indebtedness" to Aurora.[3]  The corporate assignment and the appointment of successor trustee were both recorded in the King County, Washington real property records on June 3, 2009.  Ex. P-8, P-9.

NWTS issued a Notice of Trustee's Sale as to the Shoreline Property on June 13, 2009, which was recorded on June 18, 2009. Ex. P-10.  The notice advised Plaintiff that pursuant to the Washington Deed of Trust Act ("WADOTA"), RCW 61.24, et seq., his property would be subject to public auction on September 18, 2009. The notice stated that the amount Plaintiff was required to pay to reinstate the Shoreline Deed of Trust was $19,997.47.  *Id*. Plaintiff does not dispute that he timely received the Notice of Trustee's Sale.  Plaintiff does not dispute that he defaulted under the terms of the Shoreline Note nor does he contest the amount claimed to be due under the note.

Shirley Flaig, a representative of Aurora, testified that Aurora was the subservicer of the Shoreline Note for the Federal Home Loan Mortgage Corporation ("Freddie Mac") pursuant to a Flow

---

[3]  The parties are in agreement that the purported transfer by MERS in the assignment of the deed of trust of its interest in "the Note or other evidence of indebtedness" was ineffective to transfer any interest in the Shoreline Note to Aurora.

MEMORANDUM DECISION - 5

Servicing Agreement dated August 31, 1999, between Lehman Brothers Bank, FSB and Aurora (Ex. A-4) and a Custodial Agreement: Single Family Mortgages dated as of May 1, 2008, among Freddie Mac, LaSalle Bank NA as custodian and Lehman Brothers Holdings, Inc., as seller/servicer (Ex. A-6). She further testified that Aurora is a subsidiary of Aurora Bank, which is wholly owned by Lehman Brothers, and that Aurora took actual or constructive possession of the Shoreline Note in 2007 as the subservicer of the loan for Freddie Mac.

David Wilson, a representative of Freddie Mac, testified that Freddie Mac purchased the Shoreline Note from Lehman Brothers Holding, Inc. on June 28, 2007, and that Freddie Mac has been the owner of the note since that time. He also testified that based upon his review of Freddie Mac's files, the Shoreline Note was in the possession of LaSalle acting as custodian for Lehman in April of 2009.

**B.    The Seattle Property.**

On July 1, 2005, Plaintiff executed a note in the principal amount of $200,000, in favor of Home Capital Funding as lender (the "Seattle Note"). Ex. P-13. On the same day, he also executed a deed of trust to secure his obligations under the Seattle Note (the "Seattle Deed of Trust") against his property located at 2736 N.E. 115th St., Seattle, Washington (the "Seattle Property"). The Seattle Deed of Trust named Home Capital Funding as the lender, Lawyer's Title of Washington ("Lawyer's Title") as the trustee, and MERS as the beneficiary "solely as the nominee for Lender and Lender's successors and assigns." Ex. P-12. Other than the

MEMORANDUM DECISION - 6

different parties and property, the form of the Seattle Deed of
Trust is identical to the Shoreline Deed of Trust.

NWTS received a referral for foreclosure of the Seattle
Property in a manner similar to the referral of the Shoreline
Property, except that there were no specific foreclosure
instructions contained in the electronic referral from the
proprietary website maintained by Bank of America. The one-page
screen shot introduced into evidence contains three columns of
information about the Seattle Note and Property, references the
investor name "FHLMC ACR FIX", foreclosure in the name of "BAC Home
Loans Servicing, LP fka Countrywide Home Loans Servicing LP"
("BAC"), and a monetary default in the amount of $8,162.53. Ex. P-
14. The screen shot does not include any instructions for
remitting payments and it does not reference a holder of the note.
There was no evidence of any other agreement between NWTS and BAC
or Bank of America. Employees of NWTS testified that the Bank of
America website, to which they have been given specific access
privileges, provides the only mechanism for foreclosure referrals
from Bank of America or BAC to NWTS.

On May 1, 2009, Routh Crabtree sent a letter to Plaintiff in a
form identical to the letter referencing the Shoreline Property but
referencing collection under the Seattle Note. The same day, NWTS
also issued a Notice of Default similar to the notice issued with
respect to the Shoreline Property, except that it referenced the
Seattle Property, a reinstatement figure of $12,394.32, and stated
that NWTS was acting as duly authorized agent for BAC. Exs. P-16,
P-17. Plaintiff does not dispute that he timely received the Routh

MEMORANDUM DECISION - 7

Crabtree letter and the notice of default regarding the Seattle Property.

MERS executed an assignment of its rights under the Seattle Deed of Trust to BAC on June 6, 2009, and recorded that assignment on June 12, 2009. Ex. P-18. By Appointment of Successor Trustee dated June 8, 2009 and recorded on June 12, 2009, BAC appointed NWTS as the successor trustee under the Seattle Deed of Trust. Pursuant to the assignment, BAC warranted that it was the beneficiary under the Seattle Deed of Trust and the holder of the obligation secured thereby. Ex. P-19.

NWTS issued a Notice of Trustee's Sale under the WADOTA as to the Seattle Property on June 13, 2009 and recorded that notice on June 18, 2009. The notice advised that the property would be sold at public auction on September 18, 2009. Plaintiff does not dispute his timely receipt of this notice, his default under the Seattle Note, or the amount claimed due.

On summary judgment the Court found that BAC was the holder of the Seattle Note as of the date the foreclosure against the Seattle Property commenced. At trial BAC representative Heather Dispenza testified that NWTS was acting as BAC's agent in sending out the notice of default under the Seattle Deed of Trust.

**C.    The Litigation and Prior Proceedings.**

On September 10, 2009, Plaintiff filed an action in King County Superior Court against Aurora, BAC and the other defendants in this action seeking a restraining order to stop the trustees' sales of the Shoreline and Seattle Properties as well as other relief. Then on September 17, 2009, plaintiff filed his chapter 11 case, which stayed both sales scheduled for the following day. On

MEMORANDUM DECISION - 8

November 20, 2009, Plaintiff removed the state court action to this Court.

The Court granted summary judgment in favor of BAC, dismissing the complaint as to BAC under Fed.R.Bankr.P. 7056. Dkt. 59. In granting summary judgment in favor of BAC, the Court held that BAC was the holder of the Seattle Note with authority to commence a foreclosure against the Seattle Property under the WADOTA. The Court further adopted the reasoning of the district court in *Vawter v. Quality Loan Service Corp of Wash.* in holding that the interposition of MERS as the nominee for BAC in the Seattle Deed of Trust did not prevent BAC from being the lawful holder of the Seattle Note and beneficiary under the Seattle Deed of Trust. *Vawter v. Quality Loan Service Corp of Wash.,* 707 F.Supp.2d 1115 (W.D. Wash. 2010)(addressing motions to dismiss by the lender and MERS); *see also Vawter v. Quality Loan Service Corp. of Wash.*, 2010 WL 5394893 (W.D. Wash. 2010)(addressing the trustee's motion to dismiss).

The Court also granted summary judgment dismissing Plaintiff's claims against NWTS for malicious prosecution, defamation, and quiet title, leaving only Plaintiff's claims for violation of the WADOTA, the Washington Consumer Protection Act, and the Fair Debt Collection Practices Act. As to foreclosure activities of NWTS in connection with the Seattle Property, the only issue at trial was whether NWTS was acting as BAC's agent when the notice of default was issued.

Defendants Home Capital Funding, First American, Lawyer's Title, and Winstar have not appeared in this action. Plaintiff obtained an order of default against Lawyer's Title and Winstar on

MEMORANDUM DECISION - 9

July 1, 2010.  Dkt. 79.  Plaintiff's motion for order of default against Home Capital and First American was denied.  Dkt. 33, 78.

**D.    Injury.**

Plaintiff testified that he commenced the litigation because he was confused about whether the defendants had authority to initiate foreclosure proceedings against his properties, given that they had no connection to the notes and deeds of trust he signed. He testified very generally about the injury he suffered as a result of the foreclosure actions, including emotional stress. Although he testified that as a licensed mortgage loan originator, he could be denied his license within a three year period if he was subject to a foreclosure, there was no evidence that his license actually had been affected by the foreclosures.  Plaintiff testified that he incurred attorneys' fees opposing the foreclosures (estimated to be $35,000), took time away from his work (approximately a week), and incurred miscellaneous expenses for travel and parking, but he produced no documents of any kind to support this testimony.

Plaintiff also testified that because notices of foreclosure were recorded against his properties, it made his loan origination business harder, and that he believed he lost business income as a result.  He estimated that his business income loss was $35,000; however, he could not identify any particular clients or transactions he lost as a result of the foreclosures.  Plaintiff admitted that his default under both loans occurred because of the downturn in the real estate market.  Plaintiff's expert testified to the unprecedented downturn in the mortgage and real estate market during the time the foreclosures at issue here occurred.

MEMORANDUM DECISION - 10

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B),(K). On June 23, 2011, in the middle of the trial, the United States Supreme Court issued its decision in *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011). In that case, the court held that the bankruptcy court lacks authority under Article III of the United States Constitution to enter judgment on a state law compulsory counterclaim, despite the counterclaim's statutory classification as a core matter under 28 U.S.C. § 157(b)(2)(C). On July 12, 2011, the third day of trial in this matter, counsel for Plaintiff raised a question as to whether *Stern* applied to the claims at issue. Counsel for each of the defendants gave their oral consent on the record to this Court's entry of a final order on all claims in the case. Plaintiff took no further action with regard to the Court's jurisdiction. Accordingly, the Court finds that Plaintiff is deemed to have consented to this Court's entry of a final order.[4]

Also on July 12, 2011, Plaintiff's counsel made an oral motion to stay this proceeding in light of District Judge Coughenour's Order of June 27, 2011, certifying certain questions to the Washington State Supreme Court in *Bain v. Metropolitan Mortgage*

---

[4] The Court advised Plaintiff's counsel at the hearing that if he did not believe the Court had the authority to enter a final order on all claims, he should immediately file a motion for that determination. No action was taken by Plaintiff. In *Stern*, the Supreme Court made it clear that the parties are deemed to have consented to the bankruptcy court's final adjudication by failing to object to the court's adjudication in a timely fashion. *Stern v. Marshall*, *supra* at —, 131 S.Ct. at 2608.

MEMORANDUM DECISION - 11

*Group, Inc.,* USDC case no. C09-0149-JCC.[5]  Although the Court

agrees that one or more of the issues certified in *Bain* are at

issue in this case, and that bankruptcy courts should defer to

state courts whenever possible on issues of state law, the Court

declined Plaintiff's request to stay this proceeding.  The Court

instead concluded that the parties in this case would be prejudiced

by a stay given the uncertainty in the time frame for the decision

on the certified issues by the Washington State Supreme Court.

Moreover, the issues in this case are similar to those present in

numerous other adversary proceedings pending before this Court and

judicial economy dictates that the Court decide these issues

promptly.[6]

### III. DISCUSSION

**A.   MERS as Nominee for Lender.**

Plaintiff contends that MERS could not be the beneficiary

under the deeds of trust at issue here because it never had any

interest in the notes.  From that, Plaintiff further contends that

when MERS assumed its role as the nominee for the beneficiary under

the deeds of trust, the deeds of trust were effectively separated

from the notes, rendering the notes unsecured.  Plaintiff cites to

---

[5]  The questions certified are: (i) Is MERS a lawful "beneficiary" within the terms of Washington's Deed of Trust Act, 61.24.005(2), if it never held the promissory note secured by the deed of trust?; and (ii) If so, what is the legal effect of MERS acting as an unlawful beneficiary under the terms of Washington's DOT Act? (iii) Does a homeowner possess a cause of action under Washington's Consumer Protection Act against MERS if MERS acts as an unlawful beneficiary under the terms of Washington's Deed of Trust Act?

[6]  It should be noted that Plaintiff removed this matter from the state court, where it was initially filed, after Plaintiff filed bankruptcy.  Thus, Plaintiff made the choice to pursue this matter in federal rather than state court.

MEMORANDUM DECISION - 12

three principal authorities in support of this proposition: the
Restatement (Third) of Property: Mortgages (1997)(the
"Restatement"); an article authored by Associate Dean Christopher
Peterson entitled *Foreclosure, Subprime Mortgage Lending, and The
Mortgage Electronic Registration System*, 78 U.Cin.L.Rev. 1359
(2009-2010); and the case of *Landmark National Bank v. Kesler*, 40
Kan.App.2d 325, 192 P.3d 177 (2009).[7]

Section 5.4 of the Restatement states two generally recognized
principles: (i) a transfer of an obligation secured by a mortgage
also transfers the mortgage, unless the parties agree otherwise;
and (ii) a mortgage may only be enforced by, or on behalf of, a
person who is entitled to enforce the obligation the mortgage
secures. The Restatement recognizes that if a negotiable note is
involved, the Uniform Commercial Code governs transfer or
negotiation of the note. These are principles followed in
Washington state. RCW 61.24.005(2). *See also Fidelity & Deposit
Co. of Maryland v. Ticor Title Ins. Co.*, 88 Wash.App. 64, 943 P.2d
710 (1997); *In re Jacobson*, 402 B.R. 359 (Bankr. W.D. Wash. 2009).

_____

[7] Plaintiff also called Adam Greenhalgh as an expert on the
mortgage industry. Mr. Greenhalgh identified numerous treatises,
articles and other resources related to MERS and the foreclosure
process generally, including *inter alia*, Testimony of Professor
Katherine Porter before the Congressional Oversight Panel Hearing
on the TARP Foreclosure Mitigation Program (Oct. 27, 2010);
Gretchen Valentine, *MERS: The Mortgage Electronic Registration
System*, Real Property, Probate & Trust Newsletter (Vol. 28, No. 2,
Spring 2000); Nolan Robinson, *The Case Against Allowing Mortgage
Electronic Registration Systems, Inc. (MERS) to Initiate
Foreclosure Proceedings*, 32 Cardozo L. Rev. 1621 (2011). Mr.
Greenhalgh testified to numerous alleged institutional problems in
the foreclosure process, such as "robo-signing" and imposition of
unlawful fees, which he contended were occurring on a national
basis. The Court, however, is concerned in this case solely with
the foreclosure proceedings at issue here, the actions by the
defendants, and the application of Washington state law.

MEMORANDUM DECISION - 13

The comments to the Restatement appear to provide support for Plaintiff's argument:

> [I]t is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person. This is so because separating the obligation from the mortgage results in a practical loss of efficacy of the mortgage....When the right of enforcement of the note and the mortgage are split, the note becomes, as a practical matter, unsecured.

Restatement (Third) of Property: Mortgages §5.4 cmt. a (1997).

In his article, Peterson laments the intrusion of MERS into the "transparent" and time-honored tradition of recording mortgages and deeds of trust in county land records offices. Because MERS is a private entity, to which its members pay fees for the right to view its data base and access its services, the argument is that individual homeowners are prevented from determining the owner of their note and deed of trust where MERS acts as a nominee for the lender under the deed of trust. Peterson further concludes that because MERS acts solely as the nominee for the lender under the deed of trust and it never acquires any interest in the underlying note, the note and the deed of trust are effectively separated as described in the Restatement section quoted above, thereby rendering the note unsecured.

This Court concludes that there is nothing inherent in the use of MERS as nominee under a deed of trust which irreparably splits the note from a deed of trust so as to render the note unsecured. Indeed, the Ninth Circuit Court of Appeals recently considered the status of MERS as nominee in *Cervantes v. Countrywide Home Loans, Inc.*, _ F.3d _ , 2011 WL 3911031 (9th Cir. 2011). In *Cervantes*, the court affirmed the lower court's dismissal of the plaintiffs'

MEMORANDUM DECISION - 14

complaint which contended, among other things, that the lenders and
others had conspired to use the MERS system to commit fraud and
violations of the Truth In Lending Act (TILA), 15 U.S.C. § 1601 et
seq., as well as the Arizona consumer protection act. The court
considered the history and practices of MERS and held that
plaintiffs' allegations failed to show that they relied on any
material misrepresentations with regard to MERS. The court noted
that, like Plaintiff here, the plaintiffs had consented to MERS'
role by signing the deeds of trust at issue and had failed to show
that the MERS system "actually stymied their efforts to identify
and contact the relevant party to modify their loans." *Id.* *4. On
the question whether MERS' status as nominee under the deeds of
trust resulted in an impermissible separation of the note from the
mortgage, the court concluded:

> Further, the notes and deeds are not
> irreparably split: the split only renders the
> mortgage unenforceable if MERS or the trustee,
> as nominal holders of the deeds, are not agents
> of the lenders.

*Id.* *7, *citing Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 540,
216 P.3d 158, 167 (2009). The court acknowledged that MERS had not
undertaken to foreclose the deeds of trust at issue and that as
long as the trustees had commenced the foreclosures, the only
issue, which plaintiffs had not raised, was whether the trustees
had the authority to act on behalf of the lenders in commencing the
foreclosures.

*Cervantes* supports this Court's conclusion that the role of
MERS as nominee under a deed of trust does not irreparably split
the note from the deed of trust so as to render the note unsecured.
In addition, the Court finds no statutory or common law in the

MEMORANDUM DECISION - 15

State of Washington to suggest otherwise and none has been cited by Plaintiff.

The *Landmark* case similarly does not support Plaintiff's contention that the notes here are unsecured. First, the narrow holding in the *Landmark* case was that MERS, as the nominee under a junior mortgage, was not required to be served by the senior mortgage holder in a judicial foreclosure by the senior holder. The court held that because MERS had no interest in the debt secured by the mortgage, the failure of the senior mortgage holder to serve MERS was not a fatal defect requiring the foreclosure judgment to be set aside. The court noted, however, that under Kansas law, the assignment of any mortgage "shall carry with it the debt thereby secured. Kan.Stat.Ann. §58-2323." *Landmark Nat. Bank v. Kesler*, 40 Kan.App.2d 325, 327 (Kan. Ct. App. 2008). The Kansas statute therefore is in direct conflict with the applicable Washington statutes and the Restatement. *See* RCW 61.24.005(2); RCW 62A.3-301. Moreover, the Kansas court's ruling was based upon the simple fact that the junior mortgage provided by its terms that notice from a senior mortgage holder be directed to the lender as opposed to MERS. *Id*. at 330.

Subsequent cases arising in Kansas courts have struggled to reconcile the holding of the *Landmark* case in other factual scenarios. In one recent Kansas case, the court held that MERS does not have standing to foreclose a mortgage in its own name; not an issue in this case. *MERS v. Graham*, 44 Kan. App. 2d 457, 247 P.3d 223 (Kan. Ct. App. 2010). In another recent case, a Kansas bankruptcy court held that a note does not become unsecured when the mortgage securing it is held by MERS as nominee, if MERS is

MEMORANDUM DECISION - 16

acting as the agent for the lender. *Martinez v. MERS*, 444 B.R. 192, 204 (Bankr. D. Kan. 2011)("If an agency relationship exists between those two parties such that Countrywide, as principal, can require its agent, MERS, to assign the Mortgage to it, then the Note remains secured and Countrywide can bring a foreclosure action.").

Washington law is consistent with the Restatement.  This is not a case where the foreclosures were brought by MERS in its own name.  Consequently, the Court rejects Plaintiff's contention that the Shoreline and Seattle Notes are unsecured merely because MERS acted in the role of nominee for the lenders under the terms of the deeds of trust.

Plaintiff's specific causes of action against MERS are unclear.  The only acts taken by MERS in relation to foreclosure were to execute assignments of its interests in the two deeds of trust.  Although Plaintiff attempted to prove nefariousness in the execution of those documents, none was proved.  According to the evidence, both assignments of deeds of trust, Exs. P-9 and P-18, were signed by an authorized representative of MERS.  The Court finds nothing unlawful about MERS' activities in this case.  Thus MERS is entitled to judgment in its favor as to all of Plaintiff's causes of action.

**B.    Claims Against NWTS - Seattle Property.**

Plaintiff's claims against BAC relating to the Seattle Property were resolved on summary judgment.  The only issue for the Court to determine at trial was whether NWTS was acting as the agent for BAC when it issued the notice of default under the Seattle Deed of Trust.  Heather Dispenza, an employee of BAC,

MEMORANDUM DECISION - 17

testified that NWTS was acting as BAC's agent. Plaintiff produced
no contrary evidence.

Whether NWTS was acting as an agent for BAC is governed by
Washington Law. In Washington, "[a]n agency relationship may
exist, either expressly or by implication, when one party acts at
the instance of and, in some material degree, under the direction
and control of another." *Stansfield v. Douglas County*, 107 Wash.
App. 1, 18, 27 P.3d 205, 215 (Wash. Ct. App. 2001). Agency
requires that both parties consent to the relationship and that the
principal exercises control over the agent. *Nordstrom Credit, Inc.
v. Dept. of Revenue*, 120 Wash.2d 935, 845 P.2d 1331 (1993).
Testimony of the agent made in court, testifying directly as to his
authority, may establish the existence of an agency relationship.
*Blake Sand & Gravel, Inc. v. Saxon*, 98 Wash.App. 218, 989 P.2d
1178, 1180 (Wash. Ct. App. 1999)(court held evidence established
actual authority between the alleged principal and agent – "The
undisputed testimony of Dickinson is that Zerr personally
authorized him to order the necessary materials.").

The principal may also ratify the acts of a purported agent
after the fact. "Ratification is the affirmance by a person of a
prior act which did not bind him but which was done or professedly
done on his account, whereby the act, as to some or all persons, is
given effect as if originally authorized by him." *National Bank of
Commerce v. Thomsen*, 80 Wash.2d 406, 413, 495 P.2d 332 (1972)
(citing Restatement (Second) of Agency § 82 (1958)).

Although there is no written agreement between BAC and NWTS
related to the foreclosure of the Seattle Deed of Trust, there was
oral testimony at trial that the relationship was that of agent and

MEMORANDUM DECISION - 18

principal and the Court finds that sufficient under the facts of this case. As an agent for BAC, the Court finds that NWTS had authority to issue the notice of default initiating the foreclosure under the Seattle Deed of Trust. As the successor trustee, NWTS had authority to record the notice of trustee's sale. NWTS is therefore entitled to judgment in its favor on all claims relating to foreclosure of the Seattle Deed of Trust.

**C. Plaintiff's Claims Against Aurora and NWTS - Shoreline Property.**

**1. The Washington Deed of Trust Act.**

Plaintiff contends that Aurora and NWTS violated the WADOTA by commencing a foreclosure against the Shoreline Property without the proper authority under Washington State law. The defendants characterize this claim as one for wrongful initiation of foreclosure and contend that there is no such cause of action for damages. *See Brown v. Household Realty Corp.*, 146 Wash.App. 157, 189 P.3d 233, 240 (Wash. Ct. App. 2008); *Krienke v. Chase Home Fin., LLC*, 140 Wash.App. 1032, 2007 WL 2713737 (Wash. Ct. App. 2007); *Vawter v. Quality Loan Service Corp.*, 707 F.Supp.2d at 1123; *Pfau v. Wash. Mutual, Inc.,* 2009 WL 484448 (E.D. Wash. 2009). These cases hold that a borrower who fails to enjoin a foreclosure sale is deemed to have waived the right to challenge the foreclosure.[8] The cases recognize that the WADOTA itself does not contain a provision authorizing a civil action for damages suffered

---

[8] The WADOTA was recently amended to preserve certain causes of action for borrowers who fail to enjoin a foreclosure, including claims under the Washington State Consumer Protection Act. RCW 61.24.127. Because no foreclosure sale of the Shoreline Property occurred in this case, Plaintiff is not deemed to have waived any of his causes of action.

MEMORANDUM DECISION - 19

as a result of a violation of the statute and there is no common law authority for a damages claim for violation of the WADOTA. Instead, the remedy afforded to a borrower under the WADOTA is to restrain a foreclosure sale on any "proper legal or equitable ground."  RCW 61.24.130.

Plaintiff has the burden to demonstrate noncompliance with the WADOTA.  *See Steward v. Good*, 51 Wash.App. 509, 754 P.2d 150 (Wash. Ct. App. 1988); *Koegel v. Prudential Mutual Savings Bank*, 51 Wash.App. 108, 752 P.2d 385 (Wash. Ct. App. 1988); *Washington Mutual v. Fritz (In re Fritz)*, 225 B.R. 218 (E.D. Wash. 1997).[9] In his case in chief, Plaintiff demonstrated that Aurora had no connection to any of the underlying documents until MERS assigned its interest in the Shoreline Deed of Trust to Aurora, after the foreclosure was commenced.  Based on this, Plaintiff argues that Aurora did not have authority to initiate a foreclosure on the Shoreline Deed of Trust in April 2009 when the foreclosure was commenced.  Plaintiff further argues that if Aurora had no authority to commence the foreclosure, then NWTS could not have had the authority to issue the notice of default acting as Aurora's agent.

     **a.**    <u>**General Provisions of the WADOTA.**</u>

Washington permits the foreclosure of deeds of trust nonjudicially under the WDOTA.  The statute offers a convenient and

---

[9]  These cases further hold that, at least where the trustee's sale has already occurred, the plaintiff must prove the noncompliance was prejudicial.  *See, e.g., Steward v. Good*, 754 P.2d at 155; *Koegel v. Prudential Mutual Savings Bank*, 752 P.2d at 388.

MEMORANDUM DECISION - 20

relatively inexpensive method for foreclosing deeds of trust,
provided that the lender complies with the terms of the statute.

> Washington's deed of trust act should be
> construed to further three basic objectives.
> *See* Comment, *Court Actions Contesting the
> Nonjudicial Foreclosure of Deeds of Trust in
> Washington*, 59 Wash.L.Rev. 323, 330 (1984).
> First, the nonjudicial foreclosure process
> should remain efficient and inexpensive.
> *Peoples Nat'l Bank v. Ostrander*, 6 Wash.App.
> 28, 491 P.2d 1058 (1971). Second, the process
> should provide an adequate opportunity for
> interested parties to prevent wrongful
> foreclosure. Third, the process should promote
> the stability of land titles.

*Cox v. Helenius*, 103 Wash.2d 383, 387, 693 P.2d 683 (1985).

Nonjudicial foreclosure is initiated by the issuance of a
notice of default to the debtor. Under RCW 61.24.030, the notice
of default must be transmitted "by the beneficiary or trustee" 30
days before the notice of sale is recorded, transmitted or served.[10]
The "beneficiary" under the WADOTA is the "holder of the instrument
or document evidencing the obligations secured by the deed of
trust, excluding persons holding the same as security for a
different obligation." RCW 61.21.005(2). A "holder" with respect
to a negotiable instrument is defined as the person in possession
if the instrument is payable to bearer or, in the case of an
instrument payable to an identified person, if the identified
person is in possession. RCW 62A.1-201(20). In order to discharge
an obligation under a negotiable note, the maker must pay the
"person entitled to enforce the instrument." RCW 62A.3-602(a).

---

[10] Although RCW 61.24.030 does not expressly authorize an agent
to act for the beneficiary, the Court concludes that an authorized
agent of the beneficiary may issue a notice of default on its
behalf. In 2009, RCW 61.21.031, a related provision, was amended
to refer specifically to the beneficiary or its "authorized agent"
with reference to the issuance of the notice of default.

MEMORANDUM DECISION - 21

Under applicable provisions of Article 3, a person entitled to enforce an instrument means (i) the holder of the instrument or (ii) a nonholder in possession of the instrument who has the rights of the holder. RCW 62A.3-301. A person may be entitled to enforce a negotiable instrument even though the person is not the owner of the instrument. RCW 62A.3-301.

The beneficiary must appoint the successor trustee. RCW 61.24.010(2). A successor trustee does not obtain the powers of a trustee, however, until the appointment of successor trustee is recorded. *Id.* The trustee must issue a notice of trustee's sale 90 days before the proposed sale date. RCW 61.24.040. The WADOTA does not require that an assignment of a deed of trust be recorded in advance of the commencement of foreclosure.[11]

Evidence at trial established that at the time foreclosure commenced under the Shoreline Deed of Trust, Freddie Mac was the *owner* of the Shoreline Note. The issue of ownership, however, is largely immaterial to the issues before the Court. Because under Washington law the focus of the analysis is on who is the *holder* of the note, and thus the *beneficiary* under the WADOTA, Plaintiff's concern should be whether he knows who to pay. *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011). Plaintiff's additional legitimate concern is that

---

[11] The Washington statute, under which foreclosure is driven by the holder of the obligation, is in stark contrast to Oregon's statute, ORS 86.705(1), under which foreclosure is driven by the person designated in the deed of trust as the person for whose benefit a trust deed is given. Some courts interpreting the Oregon statute have held that prior to foreclosure all assignments of the deed of trust from the outset must be recorded. *See Burgett v. MERS*, 2010 WL 4282105 (D. Or. 2010); *Barnett v. BAC Home Loan Servicing, L.P.*, 772 F.Supp.2d 1328 (D. Or. 2011). *But see James v. Recontrust Co.*, 2011 WL 3841558 (D. Or. 2011).

MEMORANDUM DECISION - 22

the authorized beneficiary or its agent is the entity that has commenced the foreclosure because only a "properly conducted foreclosure" will extinguish Plaintiff's liability for any deficiency under the note. RCW 61.24.100. *CHD, Inc. v. Boyles*, 138 Wash.App. 131, 136-7, 157 P.3d 415 (Wash. Ct. App. 2007)("properly executed" foreclosure action extinguishes the debt and transfers title to the property to the beneficiary or the successful bidder).

### b. The Validity of the Shoreline Foreclosure.

With the foregoing statutory background, the Court turns to the foreclosure actions taken in this case. The Shoreline notice of default was valid only if NWTS was either the trustee or an authorized agent for the beneficiary at the time it issued the notice of default. The Shoreline notice of trustee's sale was valid only if NWTS was the successor trustee under the Shoreline Deed of Trust pursuant to a recorded appointment of successor trustee when it issued the notice of trustee's sale.

The Shoreline Note is governed by Article 3 of Washington's version of the Uniform Commercial Code. Under Article 3, the note could be transferred by indorsement to a specific payee (special indorsement) or in blank (transferee not identified). RCW 62A.3-109; 62A.3-205. Once indorsed in blank, the Shoreline Note was payable "to bearer" and could be negotiated by the transfer of possession alone. RCW 62A.3-205.[12]

---

[12] An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving the person receiving delivery the right to enforce the instrument. RCW 62A.3-203(a). "Delivery" means a voluntary transfer of possession of the instrument. RCW 62A.1-201(14).

MEMORANDUM DECISION - 23

Plaintiff contends that because the indorsements on the Shoreline Note are not dated, it is not possible to tell in what order they were made. First, Washington law does not require that indorsements be dated. Second, even though undated, the indorsements on the Shoreline Note follow a natural progression from the initial payee, Winstar, to the blank indorsement: the indorsement at the top of the note is marked void; the first indorsement is to "Lehman Brothers Bank FSB" by Winstar; then to "Lehman Brothers Holding Inc." by Lehman Brothers Bank, FSB; then a blank indorsement by Lehman Brothers Holdings Inc. The Court finds that the Shoreline Note was endorsed in blank when Freddie Mac purchased it in June of 2007.

Plaintiff also contends that because Freddie Mac was the owner of the Shoreline Note, foreclosure could not have been commenced without Freddie Mac's authority or consent. At trial, David Wilson testified that Freddie Mac is a federally chartered organization which provides liquidity in the mortgage market by purchasing bundles of mortgages from financial institutions. He testified that Freddie Mac does not take possession of the mortgage notes it purchases. Instead, Freddie Mac requires its servicers and subservicers to maintain possession of the notes and to comply with its on-line guidelines in the conduct of any foreclosure.

Freddie Mac's foreclosure guidelines for its servicers, which are contained on-line in its *Freddie Mac Single Family Seller/Servicer Guide* (the "Guide"), do not require a servicer to obtain Freddie Mac's consent prior to commencing a foreclosure. Guide, § 66.17. On the contrary, a servicer is required to commence foreclosure *in its own name* (and not in the name of

MEMORANDUM DECISION - 24

Freddie Mac) on a first lien no later than 150 days from the due date of the last installment paid. Guide, §§ 66.9. 66.17. Because Freddie Mac was the owner of the Shoreline Note but not necessarily the "holder" of the note, the Court concludes that Freddie's Mac's authorization was not a precondition to foreclosure of the Shoreline Deed of Trust.

Aurora contends that it was the holder by constructive possession of the Shoreline Note, and that it therefore had authority to authorize its agent, NWTS, to commence the foreclosure. In Plaintiff's case in chief, he showed that Aurora had no connection to the underlying documentation, other than as a servicer of the Shoreline Note based upon the correspondence he received in 2007. Ex. A-3. He also showed that NWTS issued the notice of default before Aurora acquired any interest in the Shoreline Deed of Trust and that Aurora executed an appointment of NWTS as successor trustee before MERS assigned its interest in the Shoreline Deed of Trust to Aurora. Plaintiff testified that he was not sure that Aurora was the proper party entitled to payment to stop the foreclosure. Based on this evidence, the Court finds that it was more probable than not that Aurora was not the holder of the Shoreline Note at the time the foreclosure was initiated. The evidence was sufficient to shift the burden to Aurora to prove it that it did have proper authority as or from the holder of the note.

At trial Aurora established that it is the current holder of the Shoreline Note, and it produced the original note indorsed in blank. However, Aurora failed to prove that it was the holder of the Shoreline Note at any time prior to the time it produced the

MEMORANDUM DECISION - 25

original note at trial.  Aurora proved that it was a subservicer of the Shoreline loan when the foreclosure was commenced.  Although Aurora argued that it had constructive possession of the Shoreline Note when the foreclosure was commenced, it failed to produce any evidence of constructive possession.  According to Mr. Wilson, the Shoreline Note was in the possession of LaSalle acting as custodian for "Lehman" (which Lehman entity was not clear) in April 2009. Aurora relied on the Flow Servicing Agreement (Ex. A-4) and the Custodial Agreement (Ex. A-6) in support of its constructive possession argument.  Those agreements state that Lehman Brothers Holding agreed to service loans for Freddie Mac, and that Lehman Brothers Bank contracted with Aurora to service loans it (Lehman Brothers Bank) transferred to Freddie Mac.  There are no schedules attached to either document to confirm that the Shoreline Note is actually covered by one agreement or the other.  Nothing in the agreements connects Aurora with any subservicing duties related to the Shoreline Note, or demonstrates that Aurora had actual or constructive possession of the Shoreline Note when the foreclosure was commenced.  Aurora's representative could not even say with any certainty when or how Aurora acquired constructive possession of the Shoreline Note.

Because statutes like the WADOTA allow for nonjudicial foreclosure and dispense with many protections commonly enjoyed by borrowers, "lenders must strictly comply with the statutes, and courts must strictly construe the statutes in the borrower's favor." *Amresco Independence Funding, Inc. v. SPS Props., L.L.C.*, 129 Wash.App. 532, 537, 119 P.3d 884 (Wash. Ct. App. 2005); *see also CHD, Inc., supra* at 138.  There is a danger, however, that if

MEMORANDUM DECISION - 26

borrowers may bring civil actions merely to test the authority of
the person initiating a foreclosure, the convenience and efficiency
of the nonjudicial foreclosure process would be jeopardized. *See*
*Gomes v. Countrywide Home Loans, Inc. et al.*, 192 Cal.App.4th 1149,
1154, 121 Cal. Rptr.3d 819 (2011)("By asserting a right to bring a
court action to determine whether the owner of the Note has
authorized its nominee to initiate the foreclosure process, Gomes
is attempting to interject the courts into this comprehensive
nonjudical scheme.").[13]  On the other hand,  A borrower should not
be precluded from challenging the authority of the foreclosing
entity where there is a "specific factual basis for alleging that
the foreclosure was not initiated by the correct party." *Sacchi v.*
*MERS, et al.*, 2011 WL 2533029 (C.D. Cal. 2011)(distinguishing
*Gomes*).

This Court does not hold that substantial documentation or
testimony as to possession of the note is required in cases like
this.  However, when the borrower has a specific factual basis for
challenging the standing of the foreclosing entity, the burden
shifts to that entity to produce sufficient competent oral or
written evidence to persuade the Court that it is more probable
than not that the entity instigating the foreclosure was the holder
of the note or an authorized agent of the holder at the time the
foreclosure was commenced.  Despite two years of contentious

---

[13]  The Washington legislature recognized the need for more
accountability in the residential foreclosure context and recently
amended RCW 61.24.030 to require the trustee to obtain a
declaration under oath from the beneficiary confirming that it is
the actual holder of the note before the notice of trustee's sale
is recorded.  RCW 61.24.030(7)(a); Foreclosures–Homeowner
Assistance and Protection, 2011 Wash. Sess. Laws Ch. 58, §4 (2011).

MEMORANDUM DECISION - 27

litigation with Plaintiff, Aurora failed to meet that burden. Because Aurora failed to establish that it had authority to commence foreclosure under the Shoreline Deed of Trust, NWTS could not have had authority as Aurora's agent to issue the notice of default. Likewise, NWTS was not validly appointed as the successor trustee.[14] Accordingly, the Court finds the actions of Aurora and NWTS to foreclose the Shoreline Deed of Trust ineffective.

## 2. Fair Debt Collection Practices Act.

The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") was enacted "'to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors.'" *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir.2007) *cert. denied Check Investors, Inc. V. F.T.C.*, ___ U.S. ___, 129 S.Ct. 569, 172 L. Ed. 429 (2008)(quoting *Staub v. Harris*, 626 F.2d 275, 276-77 (3d Cir.1980) (internal quotations omitted)). Under the act, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. §1692f. Plaintiff contends that the foreclosure actions of Aurora and NWTS were in violation of the FDCPA. Aurora and NWTS urge the Court to deny Plaintiff's claim under the FDCPA because they are not "debt collectors" as defined under the statute and because the "debt"

_____

[14] In *Vawter*, the court held, on the trustee's motion to dismiss, that the premature appointment of the trustee there by the lender was a mere timing error because the lender acquired the authority to appoint the successor trustee shortly thereafter by virtue of MERS' assignment of the deed of trust to the lender. This Court does not agree, however, that becoming the assignee of the deed of trust by itself gives one the status of beneficiary under RCW 61.24.005(2) for purposes of foreclosure. *Vawter*, 2010 WL 5394893 at *4, 5.

MEMORANDUM DECISION - 28

evidenced by the Shoreline Note is not a consumer obligation covered by the act. Plaintiff has the burden of proving a claim under the FDCPA.

Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

In *Bloom v. I.C. System, Inc.*, 972 F.2d 1067 (9th Cir. 1992), the Ninth Circuit Court of Appeals considered as a matter of first impression the definition of a consumer transaction in the context of a FDCPA claim. Finding little law, it looked to cases interpreting a similar provision under TILA to conclude that a loan between the plaintiff and defendant, who were friends, was not covered by the FDCPA where the plaintiff used the borrowed funds to invest in a software company. The court relied on *Thorns v. Sundance Properties, Inc.*, 726 F.2d 1417 (9th Cir. 1984), which interpreted TILA by drawing guidance from The Federal Reserve Board (FRB) pronouncements under Regulation Z. The court suggested the following factors should be considered in determining whether credit to finance an acquisition is primarily for business or commercial purposes (as opposed to a consumer purpose):

(1) The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.

(2) The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.

MEMORANDUM DECISION - 29

> (3) The ratio of income from the acquisition to the total income of the borrower.  The higher the ratio, the more likely it is to be business purpose.
>
> (4) The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
>
> (5) The borrower's statement of purpose for the loan.

*Id.* at 1419; *See also* 12 C.F.R. § 226.3(a)(1) (1983).

A more recent pronouncement of the Ninth Circuit, *Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072 (9th Cir.2001), holds that in determining whether a loan is consumer or commercial in nature, courts should "'look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.'" *Id.* at 1075 (quoting *Riviere, et al. v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999)).  Where a person invests in non-owner occupied real estate, the loan is not covered by the FDCPA.  *See Mauro v. Countrywide Home Loans, Inc.*, 727 F.Supp.2d 145 (E.D. N.Y. 2010).

By its terms, the Shoreline Deed of Trust provides that Plaintiff was to use the property as a principal residence within 60 days after the execution of the deed of trust.  There is no evidence that Plaintiff complied with that provision.  Ex. P-1, ¶ 6.  On the contrary, Plaintiff testified that he purchased the Shoreline Property as an investment.  He is a mortgage broker who purchased multiple pieces of non-owner occupied property for himself as an investment and did not dispute that he collects rent from the property.  From the totality of the circumstances in this case, the Court concludes that the Shoreline Note is not a consumer debt and the transaction is not covered by the FDCPA.

MEMORANDUM DECISION - 30

### 3. The Washington Consumer Protection Act.

The Washington Consumer Protection Act, RCW 19.86 (the "WACPA"), prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. RCW 19.86.020. Plaintiff bases his WACPA claim on the failure of Aurora and NWTS to comply with the WADOTA. Because the defendants' violation of the WADOTA is not a *per se* violation of the WACPA under the facts of this case, the Court must examine whether Plaintiff has proved each element required under the WACPA.[15]

Case law in Washington mandates that Plaintiff prove the following elements to recover under the WACPA: (1) an unfair or deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) the act or practice impacts the public interest; (4) the act or practice caused injury to the plaintiff in his business or property; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 7787, 780, 719 P.2d 531 (1986). The statutory definitions of "trade" and "commerce" require that the act directly or indirectly affect the people of the State of Washington. Unlike the FDCPA, the WACPA does not require that the claim arise from a consumer transaction. *Short v. Demopolis*, 103 Wash.2d 52, 61, 691 P.2d 163 (1984); *Stephens v. Omni Ins. Co.*, 138 Wash.App. 151, 173, 159 P.3d 10 (Wash. Ct. App.

---

[15] *See* RCW 61.24.135. "A *per se* unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 786, 719 P.2d 531 (1986).

MEMORANDUM DECISION - 31

2007), *aff'd Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 204 P.3d 885 (2009). The act permits any "person who is injured in his or her business or property" to bring a civil suit for injunctive relief, damages, attorneys' fees and costs, and treble damages. RCW 19.86.090.

Under the facts of this case, the Court finds that Plaintiff cannot show a WACPA violation because he failed to prove an injury that is causally related to the issuance of the Shoreline notice of default and the recordation of the notice of trustee's sale. Because no trustee's sale of the property occurred, Aurora and NWTS correctly contend that Plaintiff has not yet been injured by the loss of the property. Plaintiff provided no specific testimony or corroborating evidence of an injury he suffered on account of the Shoreline foreclosure action. Although Plaintiff testified that he believed he lost business due to the foreclosure proceeding, Plaintiff could not identify a single client or transaction lost because of the actions of Aurora or NWTS. The Court finds it more likely than not that any loss of business income after the foreclosure commenced was the result of the real estate market collapse. Plaintiff did testify that he incurred expenses in pursuing his claims, but importantly, he was not specific as to whether the expenses he incurred for parking, travel and attorneys' fees, and for lost time at work, occurred before of after the litigation was commenced. Washington cases articulate some very specific requirements for proving injury under the WACPA, as outlined below, which this Court finds Plaintiff has failed to meet.

MEMORANDUM DECISION - 32

Before a violation of the WACPA may be found, an injury to the claimant's business or property must be established.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d at 792, 719 P.2d 531.  The injury "need not be great" and no monetary damages need be proven.  *Mason v. Mortgage America, Inc.*, 114 Wash.2d 842, 854, 792 P.2d 142 (1990); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash.App. 553, 563, 825 P.2d 714 (1992).  Nonquantifiable injuries, such as loss of goodwill, suffice to prove injury, *Nordstrom, Inc. v. Tampourlos*, 107 Wash.2d 735, 733 P.2d 208 (1987), but mental distress alone does not establish injury.  *Stephens*, 138 Wash.App. at 180, 159 P.3d 10. Incurring time and money to prosecute a WACPA claim does not suffice as an injury to business or property.  *Sign-O-Lite*, 64 Wash.App. at 564, 825 P.2d 714.  On the other hand, "[c]onsulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim."  *Panag*, 166 Wash.2d at 62, 204 P.3d 885.  As for damages, as opposed to injury, the court in *Mason* stated:

> [w]hether an "injury" has been sustained so as to support an award of attorneys' fees and costs under the Consumer Protection Act is a different inquiry than whether treble damages are appropriately awarded.  An injury cognizable under the Act will sustain an award of attorneys' fees while treble damages are based upon "actual" damages awarded.

*Mason*, 114 Wash.2d at 855, 792 P.2d 142.  Finally, on causation, the Washington Supreme Court instructs that "[i]f investigative expense would have been incurred regardless of whether a violation existed, causation cannot be established."  *Panag*, 166 Wash.2d at 64, 204 P.3d 885.

MEMORANDUM DECISION - 33

The *Sign-O-Lite* case is particularly relevant to this case. In that case the plaintiff, Sign-O-Lite, brought a collection action against the defendant, DeLaurenti Florists, Inc. DeLaurenti defended against the action and brought a WACPA counterclaim against the plaintiff. The court found that

> DeLaurenti's mere involvement in having to defend against Sign's collection action and having to prosecute a CPA counterclaim is insufficient to show injury to her business or property.... To hold otherwise would be to invite defendants in most, if not all, routine collection actions to allege CPA violations as counterclaims.

*Sign-O-Lite*, 64 Wash.App. at 563, 825 P.2d 714. The court nevertheless concluded that DeLaurenti had proved an injury based upon the testimony of DeLaurenti's sole proprietor that she had been unable to tend her store as she normally would have in order to address matters related to the contract with Sign-O-Lite. *Id.* at 564.

In this case, Plaintiff failed to prove either injury or actual damages. Unlike the claimant in Sign-O-Lite, Plaintiff failed to prove that he lost any time from work or incurred any expenses, including attorneys' fees, prior to filing the litigation at issue. He could not prove that the decrease in his business income was caused by the foreclosure actions as opposed to the real estate market collapse. The latter caused his default under the Shoreline Note. To find that Plaintiff proved injury or actual damages on this thin evidentiary record would be contrary to the Washington authorities cited above.

MEMORANDUM DECISION - 34

**4.    Remaining Claims**.

    **a.    Breach of Contract and RESPA**.

Although not pled in the amended complaint, in the Pretrial Order Plaintiff included a claim for breach of contract. Dkt. 168. This claim was not briefed by Plaintiff or developed at trial so the Court will not consider it. Plaintiff also included in the Pretrial Order a claim for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601-2617. Although the prayer in the Amended Complaint referred to this claim, none of the allegations in the Amended Complaint refer to this statute, nor did Plaintiff brief the claim. Thus, the Court will not consider it.

    **b.    Breach of Fiduciary Duty by NWTS**.

Plaintiff has asserted a claim against NWTS for breach of fiduciary duty. The Court agrees with NWTS that it had no fiduciary duty to Plaintiff at the time foreclosure under the Shoreline Deed of Trust commenced. Under the statute in force at the time, NWTS' duty was to act impartially between the borrower, the grantor and the beneficiary. RCW 61.24.010(4)[16] Regardless of the duty, the Court finds that Plaintiff has failed to prove that he suffered damages as a result of NWTS' actions, assuming those actions were in violation of RCW 61.24.010(4). To prove damages or loss, the evidence "must be established with sufficient certainty to provide a reasonable basis for estimating that loss." *Haner v. Quincy Farm Chemicals, Inc.*, 97 Wash.2d 753, 757, 649 P.2d 828 (1982). The court must not be required to engage in mere

---

[16] The statute was subsequently amended again to make the duty one of good faith. RCW 61.24.010(4).

MEMORANDUM DECISION - 35

speculation and conjecture.  *Rorvig v. Douglas*, 123 Wash.2d 854, 861, 873 P.2d 492 (1994).

Here, Plaintiff failed completely to quantify any actual expenditures, to support them with evidence, and to establish what point in time they were incurred.  Thus the Court may not speculate about whether such damages were the result of a breach of fiduciary duty by NWTS.

         **c.**   **Slander or Defamation of Title Against Aurora.**

The elements of a claim for slander or defamation of title are:

   1.   statements concerning the plaintiff's title were false;
   2.   statements were published maliciously;
   3.   statements were spoken with reference to some pending sale or related transaction concerning the plaintiff's property;
   4.   plaintiff suffered a pecuniary loss or injury as a result of the false statements; and
   5.   the statements were of a nature to defeat the plaintiff's title.

*Rorvig v. Douglas*, 123 Wash.2d 854, 859-60, 873 P.2d 492, 496 (1994); *Brown v. Safeway Stores, Inc.*, 94 Wash.2d 359, 375, 617 P.2d 704 (1980).  Plaintiff failed to prove there was any "pending sale" of the Shoreline Property that was impacted by a statement of Aurora, assuming all of the other elements were also met.  *Rorvig*, 123 Wash.2d at 860, 873 P.2d 492.  The Court also finds that for the same reasons stated above, Plaintiff has failed to prove damages resulting from a statement by Aurora.  Therefore, Aurora is entitled to dismissal of Plaintiff's claim for defamation of title.

         **d.**   **Malicious Prosecution Against Aurora.**

The elements of a claim for malicious prosecution are:

MEMORANDUM DECISION - 36

(1) that the prosecution claimed to have been malicious was
instituted or continued by defendant; (2) that there was want of
probable cause for the institution or continuation of the
prosecution; (3) that the proceedings were instituted and continued
through malice; (4) that the proceedings terminated on the merits
in favor of the plaintiff or were abandoned; and (5) that the
plaintiff suffered injury or damages as result of the
prosecution;(6) that there was arrest or seizure of property; and
(7) that there was a special injury which means injury that would
not necessarily result from similar causes of action. *Clark v.
Baines*, 150 Wn.2d 905, 965, 84 P.3d 245 (2004).

     As noted above, the Court finds that Plaintiff failed to prove
injury resulting from Aurora's conduct.  Aurora is entitled to
judgment in its favor on Plaintiff's claim for malicious
prosecution.


                         **CONCLUSION**

     For the foregoing reasons, the Court finds that Aurora and
NWTS violated the WADOTA in connection with the foreclosure against
the Shoreline Property and that their actions in connection with
that foreclosure are therefore ineffective.  The Court finds in
favor of MERS, Aurora and NWTS on Plaintiff's remaining causes of

MEMORANDUM DECISION - 37

action. Defendants may submit order(s) and judgment(s) consistent herewith.

Dated as of the Entered on Docket date above.

_____
Hon. Karen A. Overstreet
United States Bankruptcy Judge

MEMORANDUM DECISION - 38